Mitchell B. Seidman
Andrew Pincus
**SEIDMAN & PINCUS, LLC**
*Special Counsel to Chapter 7 Trustee*
777 Terrace Avenue, Suite 508
Hasbrouck Heights, New Jersey 07604
(201) 473-0047

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BRIAN KARWASKI and MERITA KARWOSKI,<br><br>        Debtors. | Chapter 7<br>Case No. 13-29493 (DHS) |
| NICHOLAS J. DELZOTTI, as Chapter 7 Trustee for the Estate of Brian Karwoski and Merita Karwoski,<br><br>        Plaintiff,<br><br>v.<br><br>ISMET SEMA, AMBER SKY HOME MORTGAGE, LLC,<br><br>        Defendants. | Adv. Proc. No. 14-<br><br><br><br><br><br>**COMPLAINT** |

    Nicholas J. Delzotti, in his capacity as chapter 7 trustee (the "Trustee") of the joint bankruptcy estate of Brian Karwoski and Merita Karwoski, the above-captioned debtors, as and for his complaint against Ismet Sema, Amber Sky Home Mortgage, LLC and Amber Sky Investments, LLC, alleges as follows:

## INTRODUCTION

1.        By this action, the Trustee asserts claims held by debtor Brian Karwoski ("Karwoski") as of the commencement of this chapter 7 case based upon Brian Karwoski's membership interest in Amber Marketing, LLC, which claims inure to the Trustee as representative of the estate of Brian Karwoski by operation of § 323 of the title 11 of the United States Code (the "Bankruptcy Code").  These claims arise from the gross mismanagement of the business of Amber Marketing, LLC by defendant Ismet Sema, including acts in breach of the operating agreement for the business and the overt conversion and transfer of the assets of Amber Marketing, LLC by Ismet Sema to a newly formed entity, defendant Amber Sky Home Mortgage, LLC, in a blatant attempt to squeeze Brian Karwoski out of the business.

## JURISDICTION AND VENUE

2.        The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a).

3.        This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (E) and (O).  Pursuant to Fed.R.Bankr.P. 7008(a), the Trustee consents to the entry of final orders and judgments herein by the Bankruptcy Judge.

4.        Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1409(a).

## PARTIES

5.        The Trustee is an individual with offices in Newark, New Jersey.  The Trustee serves as chapter 7 trustee of the joint bankruptcy estate of the Debtors.

6.        The Debtors are individuals who reside at 711 Chestnut Place, Franklin Lakes, New Jersey 07417.

7.      Defendant Ismet Sema ("Sema") is an individual with a residence at 57 Whiteweld Terrace, Clifton, New Jersey.

8.      Defendant Amber Sky Home Mortgage, LLC is a limited liability company organized and existing pursuant to the laws of the State of New Jersey with a principal place of business at 1 Route 46 West, Suite 1, Elmwood Park, New Jersey 07407.  Amber Sky Home Mortgage, LLC occasionally conducts business as or operates under the following trade names:  Amber Sky Home Mortgage, Amber Sky Mortgage, and Amber Sky Mortgage Solutions.

### ALLEGATIONS COMMON TO EACH COUNT

9.      In or about July 2006, Karwoski and Sema formed Amber Marketing, LLC ("Amber 1") for the purposes of engaging in the business of providing residential mortgage loan brokerage services.  In connection with the formation of Amber 1, Karwoski and Sema executed an Operating Agreement which designated each of Karwoski and Sema as equal members holding fifty percent (50%) of the issued and outstanding membership interests in Amber 1.  Karwoski was designated as managing member with the rights and responsibilities designated in the Operating Agreement.

10.      Thereafter, Amber 1 applied for and in August 2007 obtained a mortgage brokerage license from the State of New Jersey, Department of Banking and Insurance.

11.      In 2008, Karwoski and Sema also formed and held equal membership interests in a limited liability company known as Brick City Bar & Grill, LLC ("Brick City").  Brick City was formed for the purpose of owning and operating a bar and grill at 35 Edison Place, Newark, New Jersey.

12.     Initially, upon the formation of Brick City, both Karwoski and Sema provided on-site management services to Brick City and Amber 1.  However, during the course of 2009, Sema's responsibilities at Brick City were substantially reduced, such that by January 2010, Karwoski and Sema agreed that Sema would perform on-site management services at Amber 1 and that Karwoski would perform on-site management services at Brick City, and that they would draw equal salaries from those respective entities.

13.     Thereafter, the relationship between Karwoski and Sema soured, and as detailed below, Sema engaged in a pattern of activity to pilfer, embezzle, deplete and convert the assets and property of Amber 1 for his own benefit, and otherwise mismanaged the business of Amber 1 to the detriment of Karwoski's membership interest and investment therein.

14.     Despite the agreement between Karwoski and Sema regarding the fixed salary of each of them from the respective businesses of Amber 1 and Brick City, Sema extracted additional funds from Amber 1 in the form of salary, in some instances at the exorbitant rate of $15,000 per week.  Sema also frequently, indiscriminately and without restraint, issued Amber 1 checks payable to cash and retained the proceeds, and drew cash from automatic teller machines in excessive amounts.

15.     Upon the inception of Amber 1, Karwoski and Sema agreed that neither one of them would earn a commission on any loans originated by either of them, and instead such funds would constitute the profits of Amber 1 for allocation to each of them in accordance with their respective interests pursuant to the Amber 1 Operating Agreement.  Despite that agreement, Sema extracted funds from Amber 1 in the form of commissions both directly and indirectly.  For instance, on one occasion, Sema extracted the sum of $60,000 purportedly on account of loans he had closed.  On other occasions, Sema surreptitiously designated his

paramour (and now fiancé), Kelly Limbevski, as the broker who originated a loan so that she would receive the commission in his stead and Sema could thereby circumvent the arrangement between Karwoski and Sema.

16.     In addition to extracting excessive and unauthorized salary and commissions from Amber 1, Sema improperly and without the authorization and consent of Karwoski utilized the funds and property of Amber 1 for his personal expenses and entertainment, including, but not limited to the payment of Sema's dinners and bar bills, payment of Sema's car loan, and payment of Sema's condominium maintenance fees and homeowner's insurance.

17.     On or about August 12, 2011, Sema formed S and S Jewelry, LLC ("Sema Jewelry") to engage in the business of retail jewelry sales. Thereafter, Sema improperly transferred funds from Amber 1 to Sema Jewelry and used the funds of Amber 1 to pay the expenses of Sema Jewelry.

18.     In addition, under Sema's management of Amber 1, Sema arranged for patently unlawful "kickbacks" to residential real estate brokers who referred customers to Amber 1. Principally, Sema orchestrated these kickbacks by causing Amber 1 to purchase Visa Gift Cards and other gift cards in the sum of $500 each. These gift card purchases aggregated in excess of $30,000. In addition, Sema caused Amber 1 to make extensive payments to an entity known as NRT, LLC purportedly on account of advertising expenses. In reality, NRT, LLC was (and remains) a real estate sales entity which employs Jessica Rojas, the ex-wife of a long-time sales associate of Amber 1, Genaro Rojas, and the payments are disguised kick-backs for business referrals.

19.    In addition to the various improper acts described above, Sema engaged in assorted financial mismanagement of Amber 1.  In particular, Sema frequently caused Amber 1 to issue refunds to borrowers, but failed to subtract these amounts from the company's revenues.  Accordingly, Sema caused Amber 1 to pay inflated commissions to Amber 1's brokers and caused Amber 1 to improperly absorb these refunds as losses.

20.    Sema also improperly employed the services of unlicensed salesmen to procure loans for Amber 1, and paid them through indirect means in order to circumvent banking regulations which require that salespersons be licensed.  Three particularly egregious examples of the foregoing include Genaro Rojas, Andrew Petrak and Goran Matliovski.  Prior the time that Genaro Rojas obtained his license with Amber 1, Sema paid him in excess of $100,000 under the guise of "marketing" expenses.[1]  In the case of Andrew Petrak, who was disqualified from obtaining a license due to a drug conviction, Sema paid Petrak's mother, Carol Petrak, who did not provide any services to Amber 1.  Goran Matliovski received commissions while he was unlicensed and resident in the country illegally.

21.    At some point, Sema determined to force Karwoski from the business of Amber 1 entirely.[2]  In or about February 2012, Sema surreptitiously formed defendant Amber Sky Home Mortgage, LLC ("Amber 2"), an entity which would also provide residential mortgage loan brokerage services.  However, Karwoski was not afforded any membership interest in Amber 2.

---

[1]    Part of the time, Genaro Rojas was licensed with another company and therefore not eligible to receive compensation from Amber 1 on any loan revenue.

[2]    This action coincided with an orchestrated attempt by Sema to force Karwoski from the business of Brick City entirely.  Allegations detailing efforts by Sema with respect to Karwoski's interest and involvement in Brick City are set forth in pleadings filed in an action in the Superior Court of New Jersey, Bergen County, Chancery Division, entitled Ismet Sema, individually, and Ismet Sema on behalf of Brick City Bat and Grill, LLC v. Brian Karwoski, Ironbound Beer Garden, LLC, et al., bearing docket no. C-187-12 (the "Brick City Action").  The Brick City Action was stayed upon the commencement of this chapter 7 case by operation of § 362(a) of the Bankruptcy Code.

22.     The formation of Amber 2 by Sema without the express authorization and consent of Karwoski constituted a direct violation of the Amber 1 Operating Agreement inasmuch as Amber 2 constituted a directly competitive business entity and the Operating Agreement contains an express provision which prohibits members from engaging in such competing ventures without authorization of all members.

23.     After forming Amber 2, Sema engaged in the systematic use of Amber 1's property and funds to capitalize the business of Amber 2.  Specifically, Sema caused Amber 1 to transfer in excess of $125,000 to Amber 2 to satisfy capitalization requirements necessary for Amber 2 to obtain its license from the State of New Jersey Department of Banking and Insurance. In addition, Sema caused Amber 1 to pay for Amber 2's licensing fees, bank checks and assorted other property.

24.     Thereafter, Sema engaged in the systematic transfer of business assets, opportunities and profits from Amber 1 to Amber 2.  Loans originated by Amber 1 were closed by Amber 2 and the revenue and profits from such loan closings were retained by Amber 2. Employees of Amber 1 became employees of Amber 2 overnight.  In addition, Sema caused Amber 2 to convert Amber 1's customer lists, computers, files, proprietary information, furniture and other tangible and intangible assets and property.  Amber 1 received no consideration for these transfers.

25.     To conceal the transfer and conversion of Amber 1's business and assets to Amber 2 from the public and from New Jersey banking regulators, Sema intentionally named Amber 2 "Amber Sky Home Mortgage, LLC" which formerly served as a licensed trade name of Amber 1.  The use of similar names for independent mortgage brokerage businesses is expressly

prohibited by New Jersey banking regulations; to circumvent that rule, Sema registered Amber 2 as an additional office of Amber 1.

26.    In addition, to conceal the transfer and conversion of Amber 1's business and assets to Amber 2 from Karwoski, and to otherwise delay Karwoski's discovery of the foregoing until the unauthorized and improper transfers could be completed, Sema purposely delayed negotiations with Karwoski regarding the parties' good faith separations from each of Brick City and Amber 1, and inundated Karwoski with baseless and false allegations in the context of the Brick City Action.

27.    In or about February, 2012, without the authorization or consent of Karwoski, which authorization and consent was required under the Amber 1 Operating Agreement, Sema changed the registered agent of Amber 1 to himself.

28.    In the period May 2012 through June 2012, Sema caused the depletion of all funds maintained by Amber 1 in its bank account at TD Bank, in excess of $100,000 leaving a (negative) balance of -714.39.  Upon information and belief, Sema utilized these funds to pay his salary, pay his personal expenses, and/or or to capitalize and/or pay the expenses of Amber 2.

29.    On or about January 23, 2013, without the authorization or consent of Karwoski, which authorization and consent was required under the Amber 1 Operating Agreement, Sema caused Amber 1 to surrender its mortgage brokerage license to the State of New Jersey Department of Banking and Insurance.

30.    In addition, in or about June 2012, Sema terminated Amber 1's health insurance policy thereby terminating coverage for Karwoski and his family without offering any continued coverage under COBRA.

31.     Today, Amber 2 operates from the space formerly occupied by Amber 1, employs the same employees formerly employed by Amber 1, uses the same computers, property and equipment formerly used by Amber 1, and engages in substantially the same business as Amber 1.

32.     Despite request by Karwoski, Sema has refused to provide Karwoski with access to the books and records of Amber 1 or Amber 2.  The Trustee requires such access to properly investigate the mismanagement, embezzlement, conversion and other misconduct discussed above, and also to obtain information critical to enable the Trustee o Karwoski to file necessary returns with state and federal taxing authorities.

33.     On September 4, 2013, the Debtors filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code with the United States Bankruptcy for the District of New Jersey.

34.     The Trustee was appointed interim trustee for the Debtors' estate, and at the first meeting of creditors pursuant to § 341 of the Bankruptcy Code became the permanent chapter 7 trustee by operation of law.

35.     The Trustee succeeds to the claims and interests of Karwoski pursuant to § 323 of the Bankruptcy Code and has standing to prosecute this case as a representative of the Debtors' estate.

**COUNT ONE**
(Against Sema for Turnover of Property of the Estate pursuant to 11 U.S.C. § 542)

36.     The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

37.     Karwoski held an interest in Amber 1.

38.     By virtue of the acts described above, Sema transferred the business of Amber 1 to Amber 2.

39.     By virtue of the acts described above, Karwoski holds a beneficial and equitable interest in Amber 2.

40.     Sema is in possession of Karwoski's beneficial and equitable interest in Amber 2.

41.     Karwoski's beneficial and equitable interest in Amber 2 is property that the Trustee may use, sell or lease under § 363 of the Bankruptcy Code.

42.     Based on the foregoing, Sema is liable to the Trustee for the turnover of Karwoski's beneficial and equitable in interest in Amber 2 or the value thereof pursuant to § 542(a) of the Bankruptcy Code.

## COUNT TWO
(Against Sema for Fraudulent Transfer pursuant to 11 U.S.C. § 548)

43.     The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

44.     Karwoski held an interest in Amber 1.

45.     By virtue of the acts described above, Sema transferred the business of Amber 1 to Amber 2 for less than reasonably equivalent value.

46.      By virtue of the acts described above, Sema transferred Karwoski's membership interest in Amber 1 to himself for less than reasonably equivalent value.

47.     Sema holds Karwoski's interest in Amber 1 under the guise of an interest in Amber 2.

48.     At the time that Sema transferred Karwoski's interest in Amber 1 to himself:

(a)    Karwoski was insolvent or became insolvent as a result of the transfer;

(b)    Karwoski was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Karwoski was an unreasonably small capital; or

(c)    Karwoski intended to incur, or believed that he would incur, debts that would be beyond his ability to pay as such debts matured.

49.    As a result of the foregoing, the transfer is subject to avoidance pursuant to § 548(a)(1)(B) of the Bankruptcy Code.

49.    The Trustee is entitled to recover from Sema the property transferred – *i.e.*, Karwoski's equitable and beneficial interest in Amber 2 -- or the value thereof, from Sema as the initial transferee of the transfer, pursuant to § 550(a) of the Bankruptcy Code.

## COUNT THREE
(Against Sema for Breach of Contract – Operating Agreement)

50.    The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

51.    Karwoski and Sema are parties to the Amber 1 Operating Agreement, which is valid and enforceable contact under New Jersey law.

52.    The Amber 1 Operating Agreement provides that no manager shall have the authority to enter into any extraordinary transactions, including changing the purpose of the company, or amending the Operating Agreement.

53.    By surrendering Amber 1's mortgage brokerage license without the consent or authorization of Karwoski, Sema engaged in an unauthorized extraordinary transaction in violation of the Operating Agreement.

54.    By changing the registered agent of the Company from Zefkiser Sema to Ismet Sema without the consent or authorization of Karwoski, Sema engaged in an authorized extraordinary transaction in violation of the Operating Agreement.

55.    The Amber 1 Operating Agreement precludes the members of Amber 1 from engaging in any venture which competes with the business of Amber 1 without the consent of the other members.

56.    Sema surreptitiously and without the consent or authorization of Karwoski created Amber 2 to operate a mortgage brokerage and banking business, which competes with the business of Amber 1, and thereby violated the terms of the Operating Agreement.

57.    The Amber 1 Operating Agreement provides that Amber 1 shall be dissolved only upon the unanimous written consent of the members.

58.    By transferring all of the assets of Amber 1 to Amber 2 and surrendering Amber 1's mortgage brokerage license without the express written consent of Karwoski, Sema caused the *de facto* dissolution of Amber 1 in violation of the terms of the Operating Agreement.

59.    As a direct result of the foregoing and other violations of the Operating Agreement by Sema which discovery may reveal (as much of the information related to Amber 1 and Amber 2 is within the exclusive possession and control of Sema), Karwoski and the Debtors' chapter 7 estate have suffered losses and damages.

60.    Based on the foregoing, Sema is liable to the Trustee and the Debtors' estate for breach of contract, for compensatory and consequential damages in an amount to be determined at trial, together with lawful interest, as well as an award of reasonable attorney's fees, costs of suit, and such other relief as the Court deems just and proper.

## COUNT FOUR
(Against Sema for Breach of Contract – Oral Agreement re Compensation)

61.    The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

62.    Karwoski and Sema agreed that neither one of them would earn a commission on any loans originated by either of them at Amber 1, and instead such funds would constitute the profits of Amber 1 for allocation to each of them in accordance with their respective interests pursuant to the Amber 1 Operating Agreement.

63.    That oral agreement constituted a legal and binding contract under New Jersey law.

64.    Despite that oral agreement, Sema extracted funds from Amber 1 in the form of commissions both directly and indirectly.

65.    By extracting commissions from Amber 1, Sema breached his oral agreement with Karwoski.

66.    As a direct result of Sema's breach of the oral agreement, Karwoski and the Debtors' chapter 7 estate have suffered losses and damages.

67.    Based on the foregoing, Sema is liable to the Trustee and the Debtors' estate for breach of contract, for compensatory and consequential damages in an amount to be determined at trial, together with lawful interest, as well as an award of reasonable attorney's fees, costs of suit, and such other relief as the Court deems just and proper.

## COUNT FIVE
(Against Sema for Breach of Implied Covenant of Good Faith and Fair Dealing)

68.    The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

-13-

69.     The Amber 1 Operating Agreement is a valid and enforceable contract under New Jersey law.

70.     The Amber 1 Operating Agreement contains a covenant of good faith and fair dealing implied by operation of New Jersey law.

71.     By engaging in the acts described above (and such other acts as discovery may reveal), including, but not limited to: (i) extracting excessive amounts from Amber 1 in the form of salary, commissions or otherwise; (ii) utilizing the property of Amber 1 to pay personal expenses; (iii) utilizing the property of Amber 1 to pay the expenses of Sema Jewelry; (iv) employing and paying commissions to unlicensed mortgage brokers; (v) paying kickbacks to real estate brokers for business referrals; (vi) surreptitiously forming Amber 2 as a competing venture; (vi) utilizing the assets and property of Amber 1 to fund and capitalize Amber 2; (vii) transferring all of the assets, property, customer lists and contacts of Amber 1 to Amber 2 without consideration; (viii) surrendering Amber 1's mortgage broker license; and (ix) winding down and terminating the operations of Amber 1, all without the knowledge, consent or authorization of Karwoski, Sema denied Karwoski the fruits of his bargain.

72.     By virtue of the foregoing, Sema has breached the covenant of good faith and fair dealing implied in the Amber 1 Operating Agreement by law.

73.     As a direct result of his breach, Karwoski and the Debtors' chapter 7 estate have suffered losses and damages.

74.     Based on the foregoing, Sema is liable to the Trustee and the Debtors' estate for breach of the implied covenant of good faith and fair dealing, for compensatory and consequential damages in an amount to be determined at trial, together with lawful interest, as

well as an award of reasonable attorney's fees, costs of suit, and such other relief as the Court

deems just and proper.

## COUNT SIX
(Against Sema for Breach of Fiduciary Duty)

75.     The Trustee repeats and realleges the allegations above as if fully set forth

at length herein.

76.     At all times relevant herein, Sema served as a manager of Amber 1.

77.     As a manager of Amber 1, Sema owed a fiduciary duty to Amber 1's

members, including Karwoski.

78.     By engaging in the acts described above (and such other acts as discovery

may reveal), including, but not limited to: (i) extracting excessive amounts from Amber 1 in the

form of salary, commissions or otherwise; (ii) utilizing the property of Amber 1 to pay personal

expenses; (iii) utilizing the property of Amber 1 to pay the expenses of Sema Jewelry; (iv)

employing and paying commissions to unlicensed mortgage brokers; (v) paying kickbacks to real

estate brokers for business referrals; (vi) surreptitiously forming Amber 2 as a competing

venture; (vi) utilizing the assets and property of Amber 1 to fund and capitalize Amber 2; (vii)

transferring all of the assets, property, customer lists and contacts of Amber 1 to Amber 2

without consideration; (viii) surrendering Amber 1's mortgage broker license; and (ix) winding

down and terminating the operations of Amber 1, all without the knowledge, consent or

authorization of Karwoski, Sema has breached his fiduciary duty.

79.     As a direct result of the foregoing, equity holders of Amber 1, including

Karwoski and the Debtors' chapter 7 estate have been damaged.

80.     Based on the foregoing, Sema is liable to the Trustee and the Debtors'

estate for breach of fiduciary duty, for compensatory, consequential and punitive damages in an

amount to be determined at trial, together with lawful interest, as well as an award of reasonable attorney's fees, costs of suit, and such other relief as the Court deems just and proper.

### COUNT SEVEN
(Against Sema for Gross Mismanagement)

81.     Plaintiff repeats and realleges the allegations above as if fully set forth at length herein.

82.     At all times relevant herein, Sema served as manager of Amber 1, and as was generally charged with the management of Amber 1.

83.     By engaging in the acts described above (and such other acts and discovery may reveal), including, but not limited to: (i) extracting excessive amounts from Amber 1 in the form of salary, commissions or otherwise; (ii) utilizing the property of Amber 1 to pay personal expenses; (iii) utilizing the property of Amber 1 to pay the expenses of Sema Jewelry; (iv) employing and paying commissions to unlicensed mortgage brokers; (v) paying kickbacks to real estate brokers for business referrals; (vi) surreptitiously forming Amber 2 as a competing venture; (vi) utilizing the assets and property of Amber 1 to fund and capitalize Amber 2; (vii) transferring all of the assets, property, customer lists and contacts of Amber 1 to Amber 2 without consideration; (viii) surrendering Amber 1's mortgage broker license; and (ix) winding down and terminating the operations of Amber 1, all without the knowledge, consent or authorization of Karwoski, Sema committed gross mismanagement of the business affairs of Amber 1.

84.     As a direct result of the gross management by Sema, Karwoski and the Debtors' chapter 7 estate have suffered losses and damages.

85.     Based on the foregoing, Sema is liable to the Trustee and the Debtors' estate for gross mismanagement, for compensatory, consequential and punitive damages in an

amount to be determined at trial, together with lawful interest, as well as an award of reasonable attorney's fees, costs of suit, and such other relief as the Court deems just and proper.

### COUNT EIGHT
(Against Sema for Conversion)

86.    Plaintiff repeats and realleges the allegations above as if fully set forth at length herein.

87.    At all times relevant herein, Amber 1 owned assorted tangible and intangible assets and property, including office equipment, contracts, accounts, customer lists and funds maintained in bank accounts.

88.    Sema exercised improper dominion and control and otherwise converted the assets and property of Amber 1 for his personal use, to pay the expenses of Sema Jewelry, and to fund and capitalize Amber 2, all without the knowledge or authorization of Karwoski.

89.    Sema was not otherwise entitled to the assets, property and cash he converted.

90.    As a direct result of Sema's conversion of the assets, property and cash of Amber 1, the equity members thereof, including Karwoski and the Debtors' chapter 7 estate, have suffered damages and losses, including a loss and diminution in value of their respective equity interests.

91.    Based on the foregoing, Sema is liable to the Trustee and the Debtors' estate for conversion, for compensatory, consequential and punitive damages in an amount to be determined at trial, together with lawful interest, as well as an award of reasonable attorney's fees, costs of suit, and such other relief as the Court deems just and proper.

## COUNT NINE

(Against Sema and Amber 2,
for Actual Fraudulent Transfer)

92.     The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

93.     The Trustee holds claims against Sema and Amber 1 for among other things, the value of Karwoski's membership interest in Amber 1 and, as such, is a present and future creditor of Amber 1.  The Trustee is also a creditor of Sema and Amber 1 on account of other amounts which are due and owing to Karwoski.

94.     Sema caused Amber 1 to transfer its tangible and intangible business assets and personal property, including its office equipment, contracts, accounts, customer lists and funds maintained in bank accounts, to Sema and Amber 2 with actual intent to hinder, delay, or defraud Karwoski.

95.     As a direct result of the transfers, Karwoski and the Debtors' chapter 7 estate have been damaged in that, unless the transfers are avoided, assets of Amber 1 which would have been available to satisfy the debts due to the Trustee are no longer available.

96.     By virtue of the foregoing, Sema's and Amber 1's transfers to Sema and Amber 2 were fraudulent within the meaning of § 548(a)(1)(A) of the Bankruptcy Code and subject to avoidance.

97.     By virtue of the foregoing, Sema's and Amber 1's transfers to Sema, Amber 2, and Sema Jewelry were fraudulent within the meaning of N.J.S.A. 25:2-25(a) and should be avoided pursuant to N.J.S.A. 25:2-29.

98.     Based on the foregoing, Sema, Amber 2, and Sema Jewelry are liable to the Trustee and the Debtors' chapter 7 estate to have the transfers avoided and unwound, and/or

for the amount and value of the property transferred, and/or other relief as permitted by law,

together with lawful interest, as well as an award of reasonable attorney's fees, costs of suit, and

such other relief as the Court deems just and proper.

## COUNT TEN
(Against Sema and Amber 2
for Constructive Fraudulent Transfer)

99.    The Trustee repeats and realleges the allegations above as if fully set forth

at length herein.

100.    The Trustee holds claims against Sema and Amber 1 for the value of

Karwoski's membership interest and as such is a present and future creditor of Amber 1.  The

Trustee is also a creditor of Sema and Amber 1 on account of other amounts which are due and

owing to Karwoski.

101.    Sema caused Amber 1 to transfer its tangible and intangible business

assets and personal property, including its office equipment, contracts, accounts, customer lists

and funds maintained in bank accounts, to Sema and Amber 2 without receiving reasonably

equivalent value therefor.

102.    At the time of the transfers, Amber 1:

(a)    was engaged or was about to engage in a business or a transaction for
which its remaining assets were unreasonably small in relation to the
business or transaction;

(b)    intended to incur, or believed or reasonably should have believed that it
would incur, debts beyond its ability to pay as they become due; or

(c)    was insolvent or became insolvent as a result of the transfers.

103.    By virtue of the foregoing, Amber 1's transfers to Sema and Amber 2

were fraudulent within the meaning of § 548(a)(1)(B) of the Bankruptcy Code and are subject to

avoidance.

104.    By virtue of the foregoing, Amber 1's transfers to Sema and Amber 2 were fraudulent within the meaning of N.J.S.A. 25:2-25(b) and/or N.J.S.A. 25:2-27(a), and should be avoided pursuant to N.J.S.A. 25:2-29.

105.    Based on the foregoing, Sema, Amber 2, and Sema Jewelry are liable to the Trustee and the Debtors' chapter 7 estate to have the transfers avoided and unwound, for the amount and value of the property transferred, and other relief as may be permitted by law, together with lawful interest, as well as an award of reasonable attorney's fees, costs of suit, and such other relief as the Court deems just and proper.

**COUNT ELEVEN**
(Against Sema for Theft and Diversion of Corporate Opportunity)

106.    The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

107.    At all times relevant herein, Amber 1 operated a mortgage brokerage business.

108.    While a manager of Amber 1, Sema was presented with an opportunity to operate a mortgage banking business in conjunction with a mortgage brokerage business.

109.    At the time that Sema was presented with the opportunity, Amber 1 was financially able to undertake the opportunity.

110.    The opportunity was, by its nature, in the line with the business of Amber 1 and was of practical advantage to Amber 1.

111.    The opportunity to operate a mortgage banking business was one which Amber 1 had an interest or a reasonable expectancy.

112.    By embracing the opportunity to operate a mortgage banking and mortgage brokerage business in the form of Amber 2, Sema brought the interests of both Sema and Amber 2 into conflict with the interests of Amber 1.

113.    Sema's conduct as descried above constituted a theft and/or diversion of corporate opportunity (a mortgage banking business) away from Amber 1.

114.    As a direct result of the theft and/or diversion of the corporate opportunity by Sema to Amber 2, Amber 1 and its equity members, including Karwoski and the Debtors' chapter 7 estate, have suffered losses and damages.

115.    Based on the foregoing, Sema is liable to the Trustee and the Debtors' estate for theft and/or diversion of corporate opportunity, for compensatory, consequential and punitive damages in an amount to be determined at trial, together with lawful interest, as well as an award of reasonable attorney's fees, costs of suit, and such other relief as the Court deems just and proper.

## COUNT TWELVE
(Against Sema and Amber 2 for Unfair Competition)

116.    The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

117.    While a manager and member of Amber 1, Sema utilized Amber 1's property and proprietary information, including customer lists and trade names in the operation of Amber 2, thereby unfairly (i) capitalizing on the good will of Amber 1; (ii) passing off the services of Amber 2 as those of Amber 1; (iii) pirating the trade of Amber 1 by unfair and deceptive practices; and (iv) causing confusion and deception in the public and the potential customers of Amber 1.

118.    As a direct result of the foregoing unfair and deceptive practices, Amber 1 and its equity holders, including Karwoski and the Debtors' chapter 7 estate, have suffered and continue to suffer losses and damages.

119.    Based on the foregoing, Sema and Amber 2 are liable to the Trustee and the Debtors' estate for unfair competition for compensatory, consequential, punitive and other damages in amounts to be determined at trial, pre- and post-judgment interest, attorneys' fees and costs as allowed by law.

### COUNT THIRTEEN
(Against Sema and Amber 2 for Tortious Interference)

120.    The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

121.    Karwoski and Amber 1 had a prospect of economic advantage in that they would have realized a profit had Sema continued the operations of Amber 1 in good faith and in accordance with the terms of the Operating Agreement as a mortgage brokerage business and/or a mortgage banking business.

122.    In addition, Karwoski and Amber 1 had existing contractual relations with assorted vendors, customers, employees, and by way of its mortgage brokerage license.  With respect to the customers, these customers were in the market for mortgage loans or on the process of closing such loans.

123.    By transferring these customers and contracts to Amber 2, Sema and Amber 2 tortiously interfered with Karwoski's and Amber 1's prospective economic advantage and contractual relations.

124.    As a direct result of the tortious interference by Sema and Amber 2 as described above, Amber 1 and its equity holders, including Karwoski and the Debtors' chapter 7 estate, have suffered losses and damages.

125.    By reason of the foregoing, Sema and Amber 2 are liable to the Trustee and the Debtors' estate for tortious interference for compensatory, consequential and punitive damages, plus reformation, specific performance and injunctive relief, together with reasonable attorney's fees and expenses, costs of suit, pre and post judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT FOURTEEN
(Against Amber 2 for Declaratory Judgment as to Successor Liability)

126.    The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

127.    Amber 2 represents a continuation of the business of Amber 1, utilizing all of its tangible and intangible assets and property, contracts, accounts, customer lists, intangibles, trade names, employees and goodwill, and operates from the sale leased premises and engages in substantially the same business, using the same employees and vendor relations as Amber 1.

128.    The assets and property of Amber 1 were transferred to Amber 2 in fraud of Karwoski.

129.    In light of the foregoing, it would be inequitable to permit Amber 2 to continue operations free of the interest and claims of Karwoski and the Debtors' estate.

130.    Based on the foregoing, Amber 2 is properly adjudicated and declared the successor-in-interest to Amber 1 and subject to the interests and claims of Amber 1 and Karwoski, as Karwoski held in, to and against Amber 1.

### COUNT FIFTEEN
(Against Sema and Amber 2 for an Accounting)

131.    The Trustee repeats and realleges the allegations above as if fully set forth at length herein.

132.    Karwoski (and his bankruptcy estate) is an equity member of Amber 1, and a beneficial or equitable member of Amber 2 based on, among other things, its successor status vis-à-vis Amber 2 as set forth above.

133.    As an equity member of Amber 1 and Amber 2, and pursuant to the Operating Agreement and Amber 1, the Trustee has an absolute right to a full and complete accounting of the assets, liabilities, income, expenses, profits and losses of Amber 1 and Amber 2.

134.    Upon information and belief, substantial sums were expended, transferred, converted, diverted, embezzled, mismanaged, borrowed, and/or loaned by Amber 1 and Amber 2 without the knowledge or consent of Karwoski or the Debtors' estate, which either inured to their benefit or caused them loss, for which those entities have failed to account.

135.    Further, numerous persons and entities in which Karwoski holds no direct equity interest, such as Sema, Amber 2, and Sema Jewelry, received or benefitted from the income and assets of Amber 1 through improper and/or unauthorized transfers and expenditures orchestrated by Sema.

136.    Despite demand, Sema has failed and refused to provide an accounting of Amber 1 and Amber 2.

137.    Based on the foregoing, the Trustee is entitled to a full and complete accounting from Sema of Amber 1 and Amber 2, and to the payment of all sums due to Karwoski's estate on account of its equity interests in those entities.

-24-

## COUNT SIXTEEN
(Statutory Receiver for Amber 1 and Amber 2)

138.    The Trustee repeats and realleges each of the allegations above as if fully set forth at length herein.

139.    The Trustee holds claims against Amber 1 for, among other things, the value of Karwoski's membership interest and as such is a present and future creditor of Amber 1.

140.    Amber 1 is insolvent in that its assets have been transferred to Amber 2 without consideration, and because as a result thereof, the sum of its liabilities exceeds the value of its assets, and because it is unable to pay its debts as they become due.

141.    Amber 1 has suspended its ordinary operations because it lacks sufficient funds to carry on its business.

142.    The Trustee holds claims against Amber 2 for, among other things, the value of Karwoski's equitable or beneficial membership interest therein, and on the basis of his claims as set forth in this action.

143.    The business of Amber 2 is being conducted in a manner that is prejudicial to the interests of members and creditors in that, upon information and belief, Sema is utilizing its assets and property for his personal expenses and the expenses of Sema Jewelry and because it engages in kickbacks to real estate brokers in exchange for business referrals in violation of law, and engages in other improper acts.

144.    The foregoing has and will continue to result in irreparable injury to Amber 1's members and creditors and Amber 2's members and creditors in that, absent relief, Sema will continue to transfer, dissipate, waste and/or liquidate the assets of Amber 1 and Amber 2 without affording those entities adequate consideration.

145.    By reason of the foregoing, the Trustee requests the appointment of a statutory receiver pursuant to N.J.S.A. 14A:14-2 to manage the business operations of Amber 1 and Amber 2 and entry of an Order: (i) preliminarily and permanently enjoining Amber 1 and Amber 2, their respective directors and officers, and all others acting in concert with them, from exercising any of their privileges or franchises, and from receiving or collecting any debts due them from any other individual or entity, and enjoining them from paying out, selling, assigning or transferring, any of Amber 1's or Amber 2's property, except to the statutory receiver appointed by this Court, and except as the Court may order otherwise, and (ii) directing the sheriff of Bergen County, or any other county where Amber 1's and Amber 2's assets are located, to cooperate with the statutory receiver and to do all acts necessary to protect their assets.

### COUNT SEVENTEEN
(Transferee Receiver for Amber 2)

146.    The Trustee repeats and realleges each of the allegations above as if fully set forth at length herein.

147.    Sema has caused Amber 1 to transfer all, or substantially all, of its valuable tangible and intangible assets to Amber 2, and did so with the intent to hinder, delay and defraud creditors, including Karwoski and the Debtors' chapter 7 estate.

148.    In addition, and in the alternative, in connection with the transfer of assets from Amber 1 to Amber 2, Amber 1 did not receive reasonably equivalent value in exchange for the transfers.

149.    Prior to, contemporaneous with, and subsequent to the transfer, Amber 1 was, and continues to be insolvent.

150.    Sema and Amber 2 knowingly, intentionally, recklessly or negligently became the transferee of the fraudulent transfer of Amber 1's assets.

151.    Pursuant to N.J.S.A. 25:2-29, the court may appoint a receiver for the transferee of a fraudulent transfer and may empower such receiver as necessary and award such other injunctive and equitable relief as the circumstances require.

152.    Based on the foregoing, the Trustee is entitled to the appointment of a receiver for Amber 2 under N.J.S.A. 25:2-29 empowered with the same powers as those of a statutory receiver under N.J.S.A. 14A:14-2, and as requested in Count Fourteen above.

### COUNT EIGHTEEN
(Dissolution of Amber 1 and Amber 2)

153.    The Trustee repeats and realleges each of the allegations above as if fully set forth at length herein.

154.    At all relevant times herein, Karwoski was a manager and member of Amber 1.

155.    By virtue of Amber 2's successor status vis-à-vis Amber 1, Karwoski (and his chapter 7 estate) is an equitable or beneficial member of Amber 2.

156.    Sema has engaged in assorted acts of misconduct and impropriety with respect to the businesses of Amber 1 and Amber 2 as described above.

157.    Based on the conduct and improper acts of Sema as described above, all confidence between Karwoski and Sema has been destroyed so that they cannot proceed together in prosecuting the business of Amber 1 or Amber 2.

158.    Based on the conduct of Sema as recounted above, it is no longer reasonably practicable to carry on the business of Amber 1 and Amber 2 in conformity with their respective operating agreements.

159.    By virtue of the foregoing, Amber 1 and Amber 2 should be dissolved pursuant to N.J.S.A. 42:2B-48 and -49.

## COUNT NINETEEN
(Against Sema, Amber 1 and Amber 2
for the Fair Value of Membership Interests)

160.    The Trustee repeats and realleges each of the allegations above as if fully set forth at length herein.

161.    Karwoski has been ousted from management of Amber 1 and Amber 2 and will be compelled to resign his membership interest therein upon the dissolution of those entities as requested by Trustee in this Complaint.

162.    Upon resignation and/or dissolution of Amber and Amber 2, the Trustee is and shall be entitled to:  (a) all distributions due and owing to him on account of Karwoski's membership interest; and (ii) the fair value of Karwoski's membership interest pursuant to N.J.S.A. 42:2B-39 and the controlling operating agreements of those entities.

163.    Based on the foregoing, Sema, Amber 1 and Amber 2 should be compelled to pay to the Trustee all distributions owing to Karwoski on account of his equity interest in Amber 1 and Amber 2, and to pay to the Trustee the fair value of Karwoski's equity interest in each of Amber 1 and Amber 2 pursuant to N.J.S.A. 42:2B-39 and the respective operating agreements of those entities.

## COUNT TWENTY
(Against Sema for Violation of RESPA Kickback Statute)

164.    The Trustee repeats and realleges each of the allegations above as if fully set forth at length herein.

165.    Acting as an agent for Amber 1, Sema knowingly and intentionally gave gift cards and other valuable items to real estate brokers as kickbacks in exchange for the referral of application for federally related mortgage loans.

166.    Such acts by Sema constituted a violation of 12 U.S.C. § 2607(a) for which there exists a private civil right of action pursuant to 12 U.S.C. § 2607(d)(5).

167.    As a direct result of Sema's violation of 12 U.S.C. § 2607(a), Amber 1 ad its equity holders, including Karwoski and the Debtors' chapter 7 estate, have suffered damages in an amount to be determined at trial.

168.    By reason of the foregoing, Sema is liable to the Trustee and the Debtors' estate for violation of 12 U.S.C. § 2607(a) and (d), for compensatory, consequential and punitive damages, together with reasonable attorney's fees and expenses, costs of suit, pre and post judgment interest, and such other and further relief as the Court deems just and proper.

**WHEREFORE**, the Trustee demands judgment as follows:

(a)    on the first count against Sema for turnover of Karwoski's beneficial and equitable interest in Amber 2 of the value thereof pursuant to § 542(a) of the Bankruptcy Code;

(b)    on the second count avoiding the transfer of Karwoski's beneficial and equitable interest in Amber 1/Amber 2 to Sema pursuant to § 548(a)(1)(B) of the Bankruptcy Code, and for the recovery of Karwoski's beneficial and equitable interest in Amber 2, or the value thereof from Sema pursuant to § 550 of the Bankruptcy Code;

(c)    on the third count against Sema for breach of contract and awarding to the Trustee compensatory and consequential damages in an amount to be determined at trial;

(d)    on the fourth count against Sema for breach of contract and awarding to the Trustee compensatory and consequential damages in an amount to be determined at trial;

(e)      on the fifth count against Sema for breach of the implied covenant of good faith and fair dealing and awarding to the Trustee compensatory and consequential damages in an amount to be determined at trial;

(f)      on the sixth count against Sema for breach of fiduciary duty and awarding to the Trustee compensatory, consequential and punitive damages in an amount to be determined at trial;

(g)      on the seventh count against Sema for gross mismanagement and awarding to the Trustee compensatory, consequential and punitive damages in an amount to be determined at trial;

(h)      on the eighth count against Sema for conversion and awarding to the Trustee compensatory, consequential and punitive damages in an amount to be determined at trial;

(i)      on the ninth count against Sema and Amber 2 for actual fraudulent transfer, and avoiding the transfer and awarding to the Trustee the value of the property transferred;

(j)       on the tenth count against Sema and Amber 2 for constructive fraudulent transfer, and avoiding the transfer and awarding to the Trustee the value of the property transferred;

(k)      on the eleventh count against Sema for diversion of corporate opportunity and awarding to the Trustee compensatory, consequential and punitive damages in an amount to be determined at trial;

-30-

(l)      on the twelfth count against Sema and Amber 2 for unfair competition and awarding to the Trustee compensatory, consequential, punitive and other damages in amounts to be determined at trial;

(m)      on the thirteenth count against Sema and Amber 2 for tortious interference and awarding to the Trustee compensatory, consequential and punitive damages in amounts to be determined at trial, plus reformation, specific performance and injunctive relief;

(n)      on the fourteenth count declaring that Amber 2 is the successor-in-interest to Amber 1 and subject to the interests and claims of the Trustee as the Trustee held in, to and against Amber 1;

(o)      on the fifteenth count awarding to the Trustee a full and complete accounting from Sema of Amber 1 and Amber 2, and to the payment of all sums due to him on account of Karwoski's equity interests in those entities;

(p)      on the sixteenth count, appointing a statutory receiver pursuant to N.J.S.A. 14A:14-2 to manage the business operations of Amber 1 and Amber 2 and: (i) preliminarily and permanently enjoining Amber 1 and Amber 2, their respective directors and officers, and all others acting in concert with them, from exercising any of their privileges or franchises, and from receiving or collecting any debts due them from any other individual or entity, and enjoining them from paying out, selling, assigning or transferring, any of Amber 1's or Amber 2's property, except to the statutory receiver appointed by this Court, and except as the Court may order otherwise, and (ii) directing the sheriff of Bergen County, or any other county where Amber 1's and Amber 2's assets are located, to cooperate with the statutory receiver and to do all acts necessary to protect their assets;

(q)     on the seventeenth count, appointing a receiver for Amber 2 empowered with the same powers as those of a statutory receiver under N.J.S.A. 14A:14-2, and as requested in Count Fourteen above;

(r)     on the eighteenth count, dissolving Amber 1 and Amber 2 pursuant to N.J.S.A. 42:2B-48 and -49;

(s)     on the nineteenth count against Sema and Amber 2 in the amount of, and compelling them to pay to the Trustee, all distributions owing to Karwoski on account of his equity interest in Amber 1 and Amber 2, and the fair value of Karwoski's equity interest in each of Amber 1 and Amber 2 pursuant to N.J.S.A. 42:2B-39 and the respective operating agreements of those entities;

(t)     on the twentieth count against Sema for violation of 12 U.S.C. § 2607(a) and (d), and awarding to the Trustee compensatory, consequential and punitive damages in amounts to be determined at trial; plus

(s)     pre- and post-judgment interest, reasonable attorney's fees, costs of suit, and such other relief as the Court deems just and proper.

Dated:      February 3, 2014

SEIDMAN & PINCUS, LLC
*Special Counsel to the Chapter 7 Trustee*

By:      /s/ Andrew Pincus
Mitchell B. Seidman
Andrew Pincus
777 Terrace Avenue, Suite 508
Hasbrouck Heights, New Jersey 07604
Tel.  (201) 473-0047
Fax.  (201) 288-7009

-32-